

# The Attorney General of Texas

April 15, 1981

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Frank Hildebrand
Texas Tourist Development Agency
P. O. Box 12008, Capitol Station
Austin, Texas 78711

Opinion No. MW-323

Re: Construction of sections 4, 5 and 66(c) of article V of the General Appropriations Act

Dear Mr. Hildebrand:

You have requested our opinion regarding the application of three provisions of House Bill 558, the current General Appropriations Act, Acts 1979, 66th Legislature, chapter 843, to the Texas Tourist Development Agency. This agency exists primarily for the purpose of promoting tourism to Texas and encouraging travel by Texans to the state's scenic, educational and recreational attractions. V.T.C.S. art. 6144f. The provisions are as follows:

> None of the moneys appropriated by Articles I, II, III, and IV of this Act. . . shall be used for influencing the outcome of any election, or the passage or defeat of any legislative measure. Acts 1979, 66th Leg., ch. 243, art. V, §4, at 2898.

> None of the moneys appropriated under this Act shall be used by any agency. . . for the purpose of publicizing or directing attention to any individual official or employee of any agency of the State Government. Id. §5, at 2899.

> All units of state government. . . which expend appropriated State funds to publish periodicals on quarterly intervals or less than quarterly intervals at no charge shall insert in such periodicals a notice, in three consecutive issues, indicating that anyone desiring to continue to receive the publication must so indicate in writing. The agency shall furnish publications only to those persons requesting. Id. §66(c), at 2925.

You have posed the following questions:

1. Does section 4 prohibit the agency from preparing and printing, in its monthly newsletter, stories

reporting the formal votes of members of the legislature during open meetings of the full legislature or its committees, including any verbal comments that they may make in open forum?

2. Does section 5 prohibit the agency from printing, in its monthly newsletter, the name(s) of members of its board or staff, when the use of their name(s) is necessary for attribution and/or the reader's better understanding of the news story in question?

3. Does section 5 embrace the use of the name(s) of members of the state legislature in print?

4. Does an agency newsletter fall under the provisions of section 66(c) if it is published monthly?

Our objective in construing these provisions must be to ascertain the legislature's intent. Calvert v. Texas Pipe Line Co., 517 S.W. 2d 777 (Tex. 1974). Once the purpose of a provision has been determined, the provision should be given a fair and sensible construction which effectuates that purpose. Citizens Bank v. First State Bank, 580 S.W. 2d 344 (Tex. 1979); Salas v. State, 592 S.W. 2d 653 (Tex. Civ. App. - Austin 1979, no writ).

With respect to your first question, it is our understanding that the stories in question contain neutral, factual accounts of votes taken during legislative sessions or committee meetings and may include verbal comments made by legislators in open forum. The purpose of the stories is to convey, in an objective, straightforward manner, information which is a matter of public record.

We do not believe that the legislature intended for stories such as these to fall within the article V, section 4 prohibition. The clear intent of that provision, as applied in an instance involving an agency newsletter, is to prohibit deliberate efforts to sway readers so as to influence an election or to secure the passage or defeat of legislation, i.e., by couching stories in language clearly calculated to evoke a desired response. While it is inevitable that the stories you describe will occasionally affect a reader's attitudes and thereby incidentally produce the prohibited results, this will be because of the reader's reaction to the information presented, not to the manner in which it is presented. We therefore conclude that article V, section 4 does not prohibit the kind of stories you describe.

Article V, section 5 expressly prohibits agencies from using appropriated funds "for the purpose of" publicizing or directing attention to agency officials or employees. In our opinion, the quoted language establishes that in order to violate the provision, an agency must intend to publicize or direct attention to agency officials or employees. Accordingly, while in a particular instance the manner in which names are presented in a story in an agency newsletter may be such that the requisite intent may be inferred, we think that, as a general rule, the inclusion of these names for attribution or to

facilitate the reader's understanding of the story would be permissible.  Ultimately, each situation will have to be judged on its own merits.

You also ask whether article V, section 5 embraces the use of legislators' names in print.  We conclude that it does.  In our view, the legislature is clearly an "agency of the State Government" within this provision.

With regard to your last question, the phrase "or less than quarterly intervals" is admittedly ambiguous, and could be construed to mean either less frequently or more frequently than at quarterly intervals.  In our opinion, however, the latter is the proper construction.  Legislative intent must be determined by examining the entire enactment, rather than an isolated portion thereof.  Merchants Fast Motor Lines, Inc. v. Railroad Commission, 573 S.W. 2d 502 (Tex. 1978).  Statutes are to be construed with reference to their manifest object, and statutory language which is susceptible to two constructions should be given the construction which carries out such object.  Citizens Bank v. First State Bank, supra.

When viewed as a whole, article V, section 66(c) seems clearly to have been intended as a revenue-saving measure.  It would make little sense to construe it to mean that units of government which publish fewer than four issues of a publication per year, at no charge, may only send them to people who request them, but that units which publish four or more issues per year may send them to everyone on their mailing lists without regard to whether the recipient desires the publication or not.  Units of government in the latter category will obviously waste much more money than those in the former category.  We therefore construe the article V, section 66(c) requirement as applying to those units of government which publish periodicals on a monthly basis.

## SUMMARY

Article V, section 4 of the current General Appropriations Act does not prohibit an agency from publishing, in its monthly newsletter, stories which contain neutral, factual reports of the formal votes of members of the legislature and/or verbal comments which may be made by legislators in open forum.  As a general rule, article V, section 5 does not prohibit an agency from publishing the name(s) of agency officials or employees in its newsletter for attribution or to facilitate the reader's understanding of a story.  That section does embrace the use of legislators' names in print.  Article V, section 66(c) applies to units of goverment which publish periodicals on a monthly basis.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Eva Loutzenhiser
Bruce Youngblood