TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00579-CV






George M. Wawrykow, Ph.D., Appellant



v.



Texas State Board of Examiners of Psychologists, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 95-07438, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING 






 Appellant, George M. Wawrykow, challenges the judgment of the district court affirming
the order of the Texas State Board of Examiners of Psychologists ("the Board"). Pursuant to the
Psychologists' Certification and Licensing Act ("the Act"), the Board suspended appellant's licence to
practice psychology for one year but probated six months of his sentence. See Act of Sept. 1, 1993, 73d
Leg., R.S., ch. 778, § 22, 1993 Tex. Gen. Laws 3, 3047-38 (Tex. Rev. Civ. Stat. Ann. art. 4512c, since
amended). (1) Because we find that the Board violated appellant's constitutional rights by suspending his
license according to a statute that was not in effect at the time of his alleged misconduct, we will reverse
and remand. See Tex. Gov't Code Ann. § 2001.174(2)(A) (West 1998).


STATEMENT OF FACTS

 Appellant practiced psychology in Harris County. When one of his patients developed
suicidal tendencies, he recommended that she be admitted to the Rapha Treatment Center at Cypress
Creek Hospital ("Cypress") in Houston, Texas. Lacking authority to admit her to the facilities himself, he
contacted Dr. John Sneed, a psychiatrist with admitting privileges at Cypress, and requested that his patient
be hospitalized for in-patient treatment of her depression and alcoholism. Because of a conflict of interest,
Dr. Sneed contacted another psychiatrist at Cypress with admitting privileges, Dr. Steven Rosenblatt,
M.D., who admitted the patient to Cypress on February 5, 1992. As the patient's attending physician, Dr.
Rosenblatt supervised the patient's treatment team, which included appellant.

 The patient remained at Cypress from February 5, 1992, until February 11, 1992. During
that time, Dr. Rosenblatt believed appellant rendered psychological treatment to the patient without
permission and failed to record notes of treatment in a timely manner. Consequently, Dr. Rosenblatt
reported the possibility of ethical violations to the Board, and the Board, in turn, initiated proceedings
against appellant.

 Appellant received a Formal Hearing Notice ("the notice"), dated July 29, 1993, which
informed him that a hearing would be held to determine if he had violated various ethical principles and rules
of the Board. The notice contained numerous allegations against appellant and stated that his license could
be suspended for a violation of certain Board rules or for a violation of section 23(a)(5) of the Act. The
Board later conceded that the citation to section 23(a)(5) was incorrect and that it intended to prosecute
appellant under sections 23(a)(6) and (7) of the Act.

 At the administrative hearing on April 18, 1994, the Board proceeded against appellant
on only two of the charges against him, those of ethical violations and failure to timely record his notes. The
administrative law judge ("ALJ") dismissed the charges against appellant for ethical violations on the
grounds that compliance with the ethical principles could not be compelled under the rules. The only issue
remaining upon which suspension could be grounded was whether appellant violated Board Rule 465.22,
which required the recording of notes within a reasonable time of treatment, and, if so, whether the Board
could suspend his license pursuant to section 23 of the Act for such a violation. (2) The ALJ found that
appellant had violated Rule 465.22 and recommended suspension of appellant's license solely on that basis. 
Adopting the ALJ's proposal and findings of fact and conclusions of law, the Board suspended appellant's
license for one year, probating six months of the sentence. Seeking judicial review, appellant challenged
the Board's order. The district court affirmed the Board's decision, and appellant now brings this appeal. 
We will sustain appellant's second point of error, which renders it unnecessary for us to reach the merits
of appellant's remaining points of error.


ANALYSIS


 Appellant argues that the district court erred in affirming the Board's order because the
authority upon which the Board relied to suspend his license was not in effect at the time of his alleged
misconduct. Appellant claims that the statute under which he was prosecuted did not become effective until
almost two years after the events giving rise to his suspension. We must agree with appellant.

 The parties do not dispute that the alleged violation of Board Rule 465.22 occurred in
February 1992. Appellant's license, however, was suspended for this violation pursuant to the 1994
version of the Act and not according to the 1991 version that was in effect at the time of the alleged
misconduct. (3) This distinction is critical because the pertinent sections of the respective acts are
substantively different. Section 23(a)(6) of the 1994 Act provided that a psychologist's license could be
suspended for violating a rule adopted by the Board, and section 23(a)(7) called for suspension if a
psychologist violated a provision of the Act. Under the 1991 version, though, section 23(a)(6) allowed for
suspension of a psychologist's license only if the psychologist was guilty of "unprofessional conduct" as
defined by the rules established by the Board, and section 23(a)(7) made suspension permissible for any
cause for which the Board was authorized to take action by another section of the Act. The Board rules
addressing "unprofessional conduct" in 1992 defined that term as either a violation of the code of ethics (4)
or a failure to adhere to any "lawful directive" of the Board. (5) An official code of ethics was not adopted
by the Board until May 1, 1993. (6) The provision referring to "lawful directives" did not consider a violation
of Board rules unprofessional conduct until July 1992. (7) Thus, whereas there is no doubt that, had a
violation of a Board's rule occurred in 1994, appellant's license could have been suspended, the Board
has not shown its authority to suspend appellant's license for violating Board Rule 465.22 in 1992.

 We arrive at the conclusion that appellant's license was suspended pursuant to the 1994
version of the Act based on the findings and conclusions adopted by the Board. Findings of Fact Two and
Three state that appellant's license could be suspended under sections 23(a)(6) and (7) of the
"Psychologists' Certification and Licensing Act, Tex. Rev. Civ. Stat. Ann. art. 4512c (West Supp. 1994,
the 'Act')." Conclusion of Law Five states that "[t]he Board has jurisdiction over this matter pursuant to
§ 23 of the Psychologists' Certification and Licensing Act, Tex. Rev. Civ. Stat. Ann. art. 4512c (West
Supp. 1994, the 'Act')." Furthermore, the Board referenced the 1994 version of the statute as authority
for the suspension. In addressing its initial incorrect citation of section 23(a)(5) of the Act, the Board cites
the relevant language of the intended provisions, sections 23(a)(6) and (7), as allowing discipline for a
psychologist who "violates a rule of the Board" or who "violates a provision of this Act." This language
is found in the 1994 version of the Act but not in the 1991 version.

 As the reviewing court, we must measure the sufficiency of an agency order "by what it
says" and not engage in judicial speculation about the reasoning an agency used to reach its final decision. 
Sensitive Care, Inc. v. Texas Dep't of Human Servs., 926 S.W.2d 823, 828-29 (Tex. App.--Austin
1996, no writ), citing Morgan Drive Away, Inc. v. Railroad Comm'n, 498 S.W.2d 147, 152 (Tex.
1973). The only basis given for suspending appellant's license for violating Board Rule 465.22 is the 1994
version of section 23 of the Act, which is substantively different from the version in effect at the time of the
alleged misconduct. The Board has not demonstrated that appellant's license could be suspended for a
violation of Board Rule 465.22 under the 1991 version of the Act. Accordingly, the order must be
reversed because appellant's suspension pursuant to the 1994 version of the Act violates the constitutional
prohibition against retroactive enforcement laws. See Tex. Const. art. 1, § 16. See also Landgraf v. USI
Film Prods., 511 U.S. 244, 280 (1994) (presumption against retroactivity where in context of past
transactions a statute impairs a party's rights, increases liability, or imposes new duties); Ex parte Abell,
613 S.W.2d 255, 258 (Tex. 1981) (act will not be applied retroactively unless it is clear that the legislature
intended the law to apply to both past and future transaction); Merchants Fast Motor Lines v. Railroad
Comm'n, 573 S.W.2d 502, 504 (Tex. 1978) (generally, statutes apply only prospectively). Thus, the trial
court erred in affirming the Board's decision. Appellant's second point of error is sustained.


CONCLUSION

 The Board suspended appellant's license for violating the Board Rule requiring timely
recording of notes. The Board, however, relied upon a statute that was not in effect at the time of
appellant's misdeed. In addition, the Board has not shown that a violation of the Board Rule was a
transgression for which appellant's license could have been suspended at the time of the misconduct. 
Consequently, the Board has exceeded its authority, and the district court erred in affirming the Board's
order. We reverse the judgment of the district court and remand the cause to the Board for further
proceedings consistent with this opinion. See Tex. Gov't Code Ann. § 2001.174(2)(A) (West 1998).




 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and B. A Smith

Reversed and Remanded

Filed: March 5, 1998

Do Not Publish
1. Appellant's license was suspended under the version of the statute passed in 1993, and, accordingly,
we cite to that version and not to the current code. 
2. See 14 Tex. Reg. 3621 (proposed) and 14 Tex. Reg. 4599 (1989) (adopted), repealed by 19 Tex.
Reg. 7977 (1993) (proposed) and 20 Tex. Reg. 2830 (1995) (adopted). For current code, see 22 Tex.
Admin. Code § 465.22 (1997). 
3. The ALJ cites to a 1994 Act as authority for suspending appellant's license. We presume that the
ALJ is referring to legislation passed in 1993. See Act of Sept. 1, 1993, 73d Leg., R.S., ch. 778, § 22,
1993 Tex. Gen. Laws 3, 3047-38 (Tex. Rev. Civ. Stat. Ann. art. 4512c, since amended). For simplicity,
we too will refer to this legislation as the "1994 Act." However, the conduct giving rise to these
proceedings occurred in 1992, and the version of the Act in effect at that time was the 1991 version. See
Act of Sept. 1, 1991, 72d Leg., R.S., ch. 778, § 6, 1991 Tex. Gen. Laws 3, 2771-72 (Tex. Rev. Civ.
Stat. Ann. art. 4512c, since amended). Accordingly, we will refer to it as the "1991 Act."
4. See 6 Tex. Reg. 4366 (1981) (proposed) and 7 Tex. Reg. 351 (1982) (adopted), amended by 19
Tex. Reg. 858 (proposed) and 19 Tex. Reg. 4338 (1994) (adopted), repealed by 21 Tex. Reg. 7521
(proposed) and 21 Tex. Reg. 9631 (1996) (adopted).
5. See 14 Tex. Reg. 3617 (proposed) and 14 Tex. Reg. 4597 (1989) (adopted), amended by 17 Tex.
Reg. 4419 (proposed) and 17 Tex. Reg. 5455 (1992) (adopted), amended by 21 Tex. Reg. 7521
(proposed) and 21 Tex. Reg. 9631 (1996) (adopted). For current code, see 22 Tex. Admin. Code
§ 461.15 (1997).
6. The ALJ proposal acknowledged that an official code of ethics had not been adopted. Board Rule
465.36, which became effective May 1, 1993, first codified an official code of ethics for psychologists
under the Act. See 17 Tex. Reg. 8379 (1992) (proposed) and 18 Tex. Reg. 2401 (1993) (adopted),
amended by 18 Tex. Reg. 8752 (1993) (proposed) and 19 Tex. Reg. (1994) (adopted). For current
code, see 22 Tex. Admin. Code § 465.36 (1997). Section (d) of that rule provided that the ethical
standards as previously established would control for violations that occurred prior to May 1, 1993. Prior
to the enactment of this rule, the Board had been issuing Ethical Principles in a Handbook distributed to
psychologists around the State of Texas; however, there is no evidence in the record indicating that these
principles were established as an official code of ethics as formally promulgated and adopted by the Board. 

7. The term "lawful directives" originally referred to direct orders issued by the Board. See 11 Tex. Reg.
1805 (proposed) and 11 Tex. Reg. 2643 (1986) (adopted). It was not until June 19, 1992, four months
after the alleged misconduct occurred, that the Board proposed an amendment to broaden the scope of
Rule 461.15 to include "fail[ure] to adhere to any lawful directives issued in the name of the board, board
rules, and/or statutes of the State of Texas. . . ." 17 Tex. Reg. 4419 (proposed) and 17 Tex. Reg. 5456
(1992) (adopted). For current code, see 22 Tex. Admin. Code § 461.15 (1997). At the time of the
alleged misconduct, this rule did not extend unprofessional conduct to include a violation of the rules.



 been suspended at the time of the misconduct. 
Consequently, the Board has exceeded its authority, and the district court erred in affirming the Board's
order. We reverse the judgment of the district court and remand the cause to the Board for further
proceedings consistent with this opinion. See Tex. Gov't Code Ann. § 2001.174(2)(A) (West 1998).




 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and B. A Smith

Reversed and Remanded

Filed: March 5, 1998

Do Not Publish
1. Appellant's license was suspended under the version of the statute passed in 1993, and, accordingly,
we cite to that version and not to the current code. 
2. See 14 Tex. Reg. 3621 (proposed) and 14 Tex. Reg. 4599 (1989) (adopted), repealed by 19 Tex.
Reg. 7977 (1993) (proposed) and 20 Tex. Reg. 2830 (1995) (adopted). For current code, see 22 Tex.
Admin. Code § 465.22 (1997). 
3. The ALJ cites to a 1994 Act as authority for suspending appellant's license. We presume that the
ALJ is referring to legislation passed in 1993. See Act of Sept. 1, 1993, 73d Leg., R.S., ch. 778, § 22,
1993 Tex. Gen. Laws 3, 3047-38 (Tex. Rev. Civ. Stat. Ann. art. 4512c, since amended). For simplicity,
we too will refer to this legislation as the "1994 Act." However, the conduct giving rise to these
proceedings occurred in 1992, and the version of the Act in effect at that time was the 1991 version. See
Act of Sept. 1, 1991, 72d Leg., R.S., ch. 778, § 6, 1991 Tex. Gen. Laws 3, 2771-72 (Tex. Rev. Civ.
Stat. Ann. art. 4512c, since amended). Accordingly, we will refer to it as the "1991 Act."
4. See 6 Tex. Reg. 4366 (1981) (proposed) and 7 Tex. Reg. 351 (1982) (adopted), amended by 19
Tex. Reg. 858 (proposed) and 19 Tex. Reg. 4338 (1994) (adopted), repealed by 21 Tex. Reg. 7521
(proposed) and 21 Tex. Reg. 9631 (1996) (adopted).
5. See 14 Tex. Reg. 3617 (proposed) and 14 Tex. Reg. 4597 (1989) (adopted), amended by 17 Tex.
Reg. 4419 (proposed) and 17 Tex. Reg. 5455 (1992) (adopted), amended by 21 Tex. Reg. 7521
(proposed) and 21 Tex. Reg. 9631 (1996) (adopted). For current code, see 22 Tex. Admin. Code
§ 461.15 (1997).
6. The ALJ proposal acknowledged that an official code of ethics had not been adopted. Board Rule
465.36, which became effective May 1, 1993, first codified an official code of ethics for psychologists
under the Act. See 17 Tex. Reg. 8379 (1992) (proposed) and 18 Tex. Reg. 2401 (1993) (adopted),
amended by 18 Tex. Reg. 8752 (1993) (proposed) and 19 Tex. Reg. (1994) (adopted). For current
code, see 22 Tex. Admin. Code § 465.36 (1997). Section (d) of that rule provided that the ethical
standards as previously established would control for violations that occurred